ORIGINAL

# 19 MAG 11034

Approved: _Michael Neff_
MICHAEL D. NEFF / MICHAEL C. McGINNIS
Assistant United States Attorneys

Before:   THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :   **SEALED COMPLAINT**
                                :
        - v. -                  :   Violations of
                                :   18 U.S.C. §§ 1343 and 2
                                :
JEROME DIMITRIOU,               :   COUNTY OF OFFENSE:
                                :   NEW YORK
              Defendant.        :
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        KAYLA N. DOBBINS, being duly sworn, deposes and says that she is a Postal Inspector with the United States Postal Inspection Service (the "USPIS"), and charges as follows:

## COUNT ONE
### (Wire Fraud – Embezzlement through Unauthorized Personal Charges on Employer's Credit Card)

        1.    From at least on or about May 3, 2011 up to and including at least in or about September 2017, in the Southern District of New York and elsewhere, JEROME DIMITRIOU, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DIMITRIOU charged at least tens of thousands of dollars to his employer's credit card for personal expenditures without the authorization of his employer, and in connection therewith and in furtherance thereof, DIMITRIOU transmitted and caused to be transmitted

interstate wire transfers of funds, including wires through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (Wire Fraud – Embezzlement through Unauthorized Excess Salary)

2.     From at least in or about 2013 up to and including at least in or about September 2017, in the Southern District of New York and elsewhere, JEROME DIMITRIOU, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DIMITRIOU, the then-Executive Director of a non-profit religious organization, directed subordinates to issue him at least approximately $488,290 in excess salary and paychecks without the authorization or approval of his employer, and in connection therewith and in furtherance thereof, DIMITRIOU transmitted and caused to be transmitted interstate wires, including through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part and among other things, as follows:

3.     I am a Postal Inspector with the USPIS.    I am currently assigned to the USPIS's New York Division, Securities Fraud Team.    I have been personally involved in the investigation of this matter.   This affidavit is based upon my investigation, my conversations with other law enforcement agents, and my examination of reports, records, and other evidence.    Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.    Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2

## OVERVIEW

4.     From in or around 2000 until late 2017, JEROME
DIMITRIOU, the defendant, was the Executive Director of a non-
profit religious organization ("Organization-1").  While serving
as Executive Director of Organization-1, DIMITRIOU engaged in at
least two separate, long-running embezzlement schemes.  One of
DIMITRIOU's fraud schemes involved his unauthorized use of a
corporate credit card to pay for at least hundreds of personal
expenses.  For instance, from in or around May 2011 through in
or around September 2017, DIMITRIOU charged the following to his
Organization-1 credit card: at least approximately 204 charges
for airline travel with his family; at least approximately 552
iTunes charges; at least approximately 71 charges for a gym
membership; and at least approximately 44 retail charges.  The
value of the airline travel with his family, for instance, was
at least approximately $61,286.20.  Another of DIMITRIOU's fraud
schemes involved directing subordinates to issue him excess
salary and paychecks, over many years, without the authorization
or approval of his employer.  During just 2013 through September
2017, for instance, the total value of these excess salary and
paychecks was at least approximately $488,290.

## THE DEFENDANT

5.     Based  on,  among  other  things,  information
supplied  by  Organization-1,  including  emails  and  an
organizational chart, as well as my review of publicly available
materials  on  Organization-1's  website,  I  have  learned  the
following about JEROME DIMITRIOU, the defendant, among other
things:

a.     From on or about January 1, 2000 through in
or around September 2017, DIMITRIOU served as Executive Director
of  Organization-1.     While  serving  as  Executive  Director,
DIMITRIOU worked at Organization-1's United States headquarters,
which is located in New York, New York.

b.     From in or around 1992 through in or around
1998, DIMITRIOU served as Director of Finance (or Director of
Finance and Administration) of Organization-1.

c.     From in or around 1987 through in or around
1992,  DIMITRIOU  served  as  Associate  Director  of  Economic
Development.

3

## DIMITRIOU'S CREDIT CARD CHARGES FRAUD SCHEME

6.    Based on my involvement in this investigation, my conversations with others, including other law enforcement officers, my review of documents provided by Organization-1, including emails, and my review of documents provided by a credit card company (the "Credit Card Company"), including itemized charges, I have learned the following, among other things:

a.    As part of their employment, multiple high-ranking employees of Organization-1 were issued credit cards. JEROME DIMITRIOU, the defendant, was one of the individuals to receive an Organization-1 credit card.

b.    Employees were informed that these Organization-1 credit cards were intended for business purposes. If an employee did use his credit card for personal expenses, he was required to reimburse Organization-1 or to pay the Credit Card Company directly for those personal charges.

c.    From in or around 2009 up through and including on or about May 2, 2011, the Credit Card Company records for DIMITRIOU's Organization-1 credit card reveal that there were reimbursement payments made on that account.

d.    However, from on or about May 3, 2011 up through and including in or around September 2017, the Credit Card Company records for DIMITRIOU's Organization-1 credit card do not reveal any reimbursement payments made on that account. The Credit Card Company records during this period reveal remittances (i.e., payments) made by Organization-1.  Thus, I believe that, from at least on or about May 3, 2011 up through and including in or around September 2017, Organization-1 fully paid the expenses that DIMITRIOU had charged to his Organization-1 credit card.

e.    During the same period (approximately May 3, 2011 through September 2017), the Credit Card Company records for DIMITRIOU's Organization-1 credit card reveal at least hundreds of charges that appear to be personal in nature, including:

i.    At least approximately 204 charges relating to DIMITRIOU's airline travel with his family, the total value of which was at least approximately $61,286.20. Several of these trips appear to be to cities in which one or

4

more of DIMITRIOU's children are believed to have attended college. In addition, one 2016 trip was to Aruba, and in an email just before his trip, DIMITRIOU wrote that he could not meet on a particular date, because he and his wife "are taking a mini vacation from next Wednesday till the following Tuesday in Aruba."

        ii.    Hundreds of entertainment-related charges, including (but not limited to) at least approximately 552 iTunes charges, the total value of which was at least approximately $11,556.87.

        iii.   At least approximately 71 charges for a gym membership at David Barton Gym, the total value of which was at least approximately $12,685.18.

        iv.    At least approximately 44 retail charges, including at such stores as Sears, Home Depot, CVS, Duane Reade, Walgreens, and Vitamin Shoppe.

## DIMITRIOU'S EXCESS SALARY FRAUD SCHEME

    7.    Based on my involvement in this investigation, my conversations with others, including other law enforcement officers, my review of documents provided by Organization-1, including emails and payroll records, and my review of documents provided by an accountant for Organization-1, I have learned the following, among other things:

        a.    From in or around 2013 through in or around September 2017, Organization-1 paid its employees twice per month. Organization-1 paid a particular company ("Payroll Company-1") to handle payroll. Although it clearly was not general practice, it was possible for an Organization-1 employee to receive an "off-cycle" paycheck (e.g., in lieu of a typical "on-cycle" paycheck), if the Human Resources employee made such a request to Payroll Company-1.

        b.    DIMITRIOU repeatedly sent emails to an employee within the Human Resources department of Organization-1, indicating that they should arrange for him to get additional paychecks, above and beyond his authorized salary, and in addition to the two standard "on-cycle" paychecks. For example:

        i.    On or about Wednesday, August 10, 2016, DIMITRIOU wrote, "Please put an extra payroll in today for me in addition to the Friday Payroll." The employee whom DIMITRIOU

5

had directed replied, "Done be there tomorrow, regular payroll is Monday."

ii. On or about Friday, June 24, 2016, DIMITRIOU wrote, "Can you log in remote and post an extra payroll for me for tomorrow?" The employee whom DIMITRIOU had contacted responded shortly thereafter, indicating that "p/r has processed".

iii. On or about February 16, 2016, DIMITRIOU wrote, "Please put an extra payroll in for me today." The employee whom DIMITRIOU had directed replied, "Done!"[1]

c. The chart below summarizes the approximate discrepancies, for only 2013 through 2017, between DIMITRIOU's authorized salary on the one hand, and what he in fact was paid -- by virtue of his directing subordinates to pay him "extra payroll[s]" -- on the other:

| YEAR | AUTHORIZED SALARY | BONUS | TOTAL PAYMENT | EMBEZZLED AMOUNT |
|------|-------------------|-------|---------------|------------------|
| 2013 | $300,000 | $12,500 | $400,000 | $87,500 |
| 2014 | $300,000 | $12,500 | $425,000 | $112,500 |
| 2015 | $306,750 | $0 | $396,125 | $89,375 |
| 2016 | $318,264 | $0 | $450,874 | $132,610 |
| 2017 | $305,003 | $32,000 | $404,680.70 | $66,305 |
| TOTAL EMBEZZLED AMOUNT (2013 - 2017) | | | | $488,290 |

8. Based on my involvement in this investigation, my conversations with others, including other law enforcement officers, my review of documents provided by Organization-1, including emails and financial records, and my review of publicly available documents, I have learned that, during the period when JEROME DIMITRIOU, the defendant, was committing both embezzlement schemes as set forth above, Organization-1 was enduring financial difficulties, which DIMITRIOU was well aware of.

---

[1] For some of this period, Organization-1 and DIMITRIOU were engaged in contract negotiations, which included the possibility of increased compensation. However, these negotiations never produced an agreed-upon contract signed by both sides.

WHEREFORE, deponent prays that an arrest warrant be issued for JEROME DIMITRIOU, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
KAYLA N. DOBBINS
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
22nd day of November 2019

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK